**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **Crim. Action No. 1:18-CR-50-1**
**(Kleeh)**

**TERRICK ROBINSON,**

**Defendant.**

**ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR,**
**IN THE ALTERNATIVE, MOTION FOR NEW TRIAL [ECF NO. 270]**

On January 23, 2020, Defendant Terrick Robinson ("Robinson") filed a Motion for Judgment of Acquittal or, in the Alternative, Motion for New Trial and Incorporated Memorandum of Law [ECF No. 270]. The Government filed its Response on February 20, 2020 [ECF No. 291]. Robinson raises 12 assignments of error in his motion. The Court will discuss each in turn. For the reasons discussed here, the motion is denied on every ground.

## I. INTRODUCTION

Following a nine-day jury trial, Robinson was found guilty on each count in which he was charged of the Superseding Indictment in this case. On January 16, 2020, prior to the jury beginning its deliberations and at the close of the United States' case-in-chief, Robinson, by counsel, moved for judgment

of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. That motion was based on most, if not all, of the same grounds Robinson advances here. Despite counsel's best efforts and diligence, Robinson is unable to point the Court to any new or additional authority in support of the various grounds advanced in this motion other than what he relied upon previously.

## II. APPLICABLE LAW

Robinson's motion is based on a number of grounds, which are addressed separately below. However, a number of individual grounds upon which Robinson relies hinge on whether, under Rule 29 of the Federal Rules of Criminal Procedure, sufficient evidence existed to sustain his convictions. This Court has recently summarized the governing standard.

> Federal Rule of Criminal Procedure 29(c) provides that, on a defendant's motion, a court may "set aside" a jury verdict and "enter an acquittal." A defendant who challenges the sufficiency of the evidence under this Rule faces an "imposing burden." United States v. Martin, 523 F.3d 281, 288 (4th Cir. 2008) (citing United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997)). He must establish that "the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt." Id. (citing United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).
>
> When reviewing the sufficiency of the

> evidence supporting a criminal conviction, courts are "limited to considering whether 'there is substantial evidence, taking the view most favorable to the government, to support it.'" Beidler, 110 F.3d at 1067 (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). In other words, the Court must uphold the jury's verdict if, when viewed in the light most favorable to the government, there is sufficient evidence from which "any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997).

United States v. Rock, No. 1:19-CR-56, 2020 WL 760399, at *1-2 (N.D.W. Va. Feb. 14, 2020).

The jury, not the court, "weighs the credibility of the evidence and resolves any conflicts in the evidence presented." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997); see also United States v. Whyte, No. 4:12-CR-00021-2, 2018 WL 521593, at *3 (W.D. Va. Jan. 23, 2018) ("As such, the court may not usurp the jury's exclusive function by weighing evidence, drawing inferences of fact, resolving evidentiary conflicts, or assessing credibility of witnesses.") (citation omitted). Reversal of a jury's verdict of guilty is reserved for cases "where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978).

**USA V. ROBINSON** **1:18-CR-50-1**

**ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL [ECF NO. 270]**

## III. DISCUSSION

### 1. Motion to Dismiss - Speedy Trial Act, 18 U.S.C. § 3161

Robinson claims that he was denied his right to a speedy trial pursuant to the Speedy Trial Act, 18 U.S.C. § 3161. Robinson, as noted by his counsel during the February 26, 2020, hearing on the pending motion, points to no new authority and advances no new arguments in support of this aspect of his motion. The Court incorporates by reference its legal analysis and conclusions in its *Memorandum Opinion and Order Denying Amended Motion to Dismiss (Speedy Trial Act) [ECF No. 124] and Motion to Dismiss (Sixth Amendment) [ECF No. 131]*, docketed at ECF No. 229. For those reasons, the motion is denied as to this ground.

### 2. Motion to Dismiss - Sixth Amendment

Robinson claims that he was denied his right to a speedy trial pursuant to the Sixth Amendment of the United States Constitution. For the most part, Robinson offers no new authority or arguments in support of this ground. In support of the motion based on the Sixth Amendment that was made prior to trial, Robinson pointed to a possible defense witness that counsel was unable to locate given Robinson's incarceration. Counsel, at that time, advised that the only information available was a first name. The Court denied the motion before

4

trial, noting that the defense did not lose any exculpatory evidence because counsel continued to have access to Robinson as well as his social media [ECF No. 229 at 8]. During the February 26, 2020, hearing, counsel was provided the opportunity, with the benefit of a full jury trial upon which to reflect, to identify any additional prejudice that Robinson may have faced in mounting his defense, based on the delay between indictment and his trial. The Court specifically inquired about this potential witness. Robinson's counsel noted that the witness was identified as Samantha Rogers. Counsel further confirmed that this witness was listed as a potential witness for the Government **prior** to trial commencing [ECF No. 223]. Neither party elected to subpoena or call Rogers as a witness. Considering this, the Court, again, cannot conclude that Robinson suffered any prejudice as it relates to this potential witness.

For that reason and the legal analysis and conclusions in the Court's *Memorandum Opinion and Order Denying Amended Motion to Dismiss (Speedy Trial Act) [ECF No. 124] and Motion to Dismiss (Sixth Amendment) [ECF No. 131]*, docketed at ECF No. 229, which is incorporated by reference herein, the motion is denied as to this ground.

**3. Motion to Suppress - Vehicle Search**

Robinson claims that the Court erred in denying his Motion to Suppress the Fruits of the Search Warrant of the Hyundai Vehicle [ECF No. 155]. Counsel offered no new argument and pointed to no new authority other than that relied upon pretrial. The Court incorporates by reference its legal analysis and conclusions in its *Memorandum Opinion and Order Denying Motions to Suppress [ECF Nos. 155, 161]*, docketed at ECF No. 228. For those reasons, the motion is denied as to this ground.

**4. Motion to Suppress - Hotel Room**

Robinson claims that the Court erred in denying his Motion to Suppress the Fruits of the Search Warrant of the Hotel Room [ECF No. 161]. No new arguments and no new legal authority were advanced in the pending motion other than those offered pretrial. The Court incorporates by reference its legal analysis and conclusions in its *Memorandum Opinion and Order Denying Motions to Suppress [ECF Nos. 155, 161]*, docketed at ECF No. 228. For those reasons, the motion is denied as to this ground.

**5. References to Delay During Trial**

During the trial, Robinson's counsel attempted to describe evidence that the Government engaged in prosecutorial abuse by

delaying Robinson's trial. The Government objected to such attempts during both opening statements and the cross examination of Lieutenant Brian Purkey ("Purkey"). The Court sustained those objections. Robinson now argues that this was in error and that the evidence should have been admitted because it reflected upon the credibility of Purkey and the prosecution as a whole. In response, the Government argues that Robinson's counsel's remarks "had no relevance or basis in fact" and that the Court's ruling was proper.

The Court agrees with the Government on this issue. Robinson's counsel was attempting to outline and introduce evidence regarding the timing of the Indictment, the Superseding Indictment, and the federal arrests and/or arraignments of different defendants in this case. Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Credibility is always an issue within the province of the jury. However, the Court cannot find any reason why the alleged improper delay would reflect upon the credibility of Purkey or any other law enforcement witness. Decisions concerning indictment, superseding indictment, and the timing of such developments are vested to the discretion of

counsel for the prosecution whose credibility as witnesses is not before the jury. Furthermore, the evidence that Robinson's counsel attempted to reference or elicit was not relevant to any of the charges in the Superseding Indictment for which Robinson was standing trial.[1] Simply put, the evidence was not relevant to any question before the jury. For those reasons, the motion is denied as to this ground.

**6. Rule 29 Motion: Count Ten**

Robinson argues that the Court erred in denying his Rule 29 Motion for Judgment of Acquittal as to Count Ten (Distribution of Fentanyl Resulting in Serious Bodily Injury or Death). Robinson argues that the Government failed to prove that fentanyl was the "but for" cause of Ms. Dubois's death. In support of his motion, Robinson cites Burrage v. United States, 571 U.S. 204, 218 (2014), and United States v. Alvarado, 816 F.3d 242 (4th Cir. 2016).[2]

---

[1] This "evidence" is relevant to the Sixth Amendment analysis undertaken before trial and again here. That question is for the Court. The trial record need not be vouched on the issue as it runs the risk of jury confusion based on evidence not relevant to any question the jurors must decide.

[2] Neither the Court nor counsel could point to any specific Fourth Circuit guidance on this particular issue. In Alvarado, the Court focused its analysis on whether the district court erred in refusing to provide any additional instruction in response to a jury question. See id. at 249. That decision did not assess the question here: whether the Government can only secure a conviction under the § 841(b)(1)(C) sentencing

In Burrage, the decedent had taken a mixture of drugs before overdosing and dying, including, at a minimum, marijuana, oxycodone, and heroin. Burrage was charged with and convicted of distribution of heroin resulting in death. Before finding him guilty, the jury was instructed that it must find "that the heroin distributed by the Defendant was a contributing cause of Joshua Banka's death." Id. at 208. The first medical expert to testify determined that multiple drugs were present in Banka's system and that heroin "was a contributing factor" in his death. Id. at 207. The second medical expert described Banka's cause of death as "mixed drug intoxication" and could not say whether he would have lived had he not taken the heroin. Id. at 207.

enhancement via the "but-for" theory. The Court finds that Burrage does not so limit the Government. Other circuits agree. See, e.g., United States v. Feldman, 936 F.3d 1288, 1314 (11th Cir. 2019) ("Notably, Burrage expressly held that the Government need not prove that a Schedule I or II drug was 'an independently sufficient cause of the victim's death or serious bodily injury,' stating that only but-for causation is required, and implying that we can dispense with the but-for test when a drug is an independently sufficient cause of death.") (citation omitted); United States v. Allen, 716 F. App'x 447 (6th Cir. 2017) (unpublished) ("[A]s Burrage makes clear, there are two ways to satisfy the causation requirement of 21 U.S.C. § 841(a)(1) with a 'death results' enhancement under § 841(b)(1)(C): one can provide drugs that are either an independent, sufficient cause of the victim's death or a but-for cause."); United States v. Lewis, 895 F.3d 1004, 1010 (8th Cir. 2018) ("Following Burrage, the statutory sentencing enhancement in § 841(b)(1)(C) may be proved in two ways: (1) 'but-for' cause, or (2) independently sufficient cause.") (citation omitted).

Importantly, in Burrage, "there was no evidence that Banka's heroin use was an independently sufficient cause of his death." Id. at 205. The Court ultimately held: **"[A]t least where use of the drug distributed by the defendant is not an independently sufficient cause** of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." Id. at 218 (emphasis added).

The ultimate conclusion in Burrage is significantly distinguishable from the evidence in this case. Here, during trial, Dr. Colin Herbert, the medical examiner from the Georgia Bureau of Investigation, testified that Dubois died from the combined toxic effects of fentanyl, acetyl fentanyl, and methamphetamine. He also testified that the level of fentanyl in Dubois's system was at such a toxic level to be lethal and an independently sufficient cause of her death. He further testified about symptoms of a fentanyl overdose, including decreased heart rate and respiration, pulmonary edema, and the "foam cone." Dr. Herbert viewed the picture of Dubois in the bathtub and confirmed that the foam at her mouth was consistent with symptoms of an opioid overdose, as opposed to a methamphetamine overdose. Further, her heart was not damaged,

which would have been consistent with a methamphetamine overdose.

William Gregory Chappell ("Chappell") testified that Dubois snorted a line of "china white" and soon became unconscious. Joel Jiminez ("Jiminez") and Chappell both testified that Dubois was snoring loudly and that they were unable to wake her. The Government also introduced text messages between Robinson and Rebecca Larch ("Larch"), in which Larch told Robinson that people had overdosed on the drugs he had given her.

Because the holding in Burrage specifically excluded situations in which the drug use was an independently sufficient cause of death, the Government may pursue another theory without proving but-for causation. The Government pursued a theory of an "independently sufficient cause" of death. Based on the testimony of Herbert, Chappell, and Jiminez, along with the text messages from Larch, the Government introduced sufficient evidence to prove that fentanyl was the cause of Dubois's death under this theory. Therefore, the motion is denied as to this ground.

**7. Rule 29 Motion: Count Eight**

Robinson argues that the Court erred in denying his Rule 29 Motion for Judgment of Acquittal as to Count Eight (Use of a Firearm During and in Relation to a Drug Trafficking Crime -

Aiding and Abetting). Robinson argues that there was insufficient evidence as a matter of fact and law to find that he aided or abetted either William Chappell or Seddrick Banks to possess or use a firearm during and in relation to a drug trafficking crime.

In Rosemond v. United States, in analyzing the requirement in proving such a charge, the Supreme Court held that "the Government makes its case by proving that the defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." 572 U.S. 65, 67 (2014). Here, the Government presented evidence that Robinson hired Chappell to be his "right hand man." Chappell testified that Robinson hired him to protect Robinson and to protect Robinson's drugs. Robinson knew that Chappell carried a firearm. This was sufficient evidence to prove Count Eight. For these reasons, the Court denies the motion on this ground.

**8. Rule 29 Motion: Count Nine**

Robinson argues that the Court erred in denying his Rule 29 Motion for Judgment of Acquittal as to Count Nine (Use and Carry a Firearm During and in Relation to a Drug Trafficking Crime). Robinson argues that there was insufficient evidence as a matter of fact and law to find that he used or carried a firearm during

**USA V. ROBINSON** **1:18-CR-50-1**

**ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL [ECF NO. 270]**

and in relation to a drug trafficking crime.

When law enforcement executed a search warrant upon Robinson's vehicle on September 4, 2018, they recovered a firearm. Jiminez, along with Cameron Lynch ("Lynch"), testified that Robinson owned and possessed that firearm. Jiminez testified that Robinson gave him the firearm to take to Lynch's residence. Lynch testified that Jiminez had a gun at his residence. There was, as the Government describes it, "overwhelming evidence" that Robinson distributed methamphetamine, cocaine, and other controlled substances. There was sufficient evidence to support a conviction as to Count Nine. Therefore, Robinson's motion is denied on this ground.

**9. Rule 29 Motion: Count Seven**

Robinson argues that the Court erred in denying his Rule 29 Motion for Judgment of Acquittal as to Count Seven (Possession with Intent to Fentanyl [sic] - Aiding and Abetting). Robinson argues that there was a break in the chain of custody of the substance found to be fentanyl. Specifically, after law enforcement searched Room 202 of the Red Roof Inn in Fairmont, West Virginia, a duffel bag was left unattended and not discovered until a hotel employee found it the next day. The duffel bag was then given to law enforcement. Robinson argues

13

that the chain of custody was broken when it was left unattended for approximately eight (8) hours in the "open and unsecured Room 202."

During the trial, Sergio Aldana ("Aldana"), a housekeeper for the Red Roof Inn, testified that he discovered the duffel bag containing the fentanyl in Room 202. He turned over the fentanyl to White Hall Police Chief Geno Guerrieri ("Guerrieri"). Guerrieri then gave the fentanyl to Purkey. Purkey gave the fentanyl to TFO Roscoe. TFO Roscoe submitted the fentanyl to the DEA Mid-Atlantic lab for analysis.

Counsel acknowledged that Rule 901 of the Federal Rules of Evidence establishes a "light" burden. The Court agrees and finds that the threshold burden was satisfied here. See United States v. Summers, 666 F.3d 192, 201 (4th Cir. 2011) ("The district court's role is merely to act as a gatekeeper for the jury, and the proponent of the evidence need only make a prima facie showing of its authenticity.") (citation omitted). The Court finds that the eight-hour period during which the bag was left in Room 202 was not a break in the chain of custody but, rather, a delay in the chain's beginning. The chain of custody began when Aldana found the fentanyl. He then gave it to law enforcement, and the chain was never broken thereafter. Counsel was free to argue at trial as to how much weight to give the

evidence, considering the delay in finding the fentanyl, but the delay did not constitute a fatal break in the chain of custody. There was no argument or contention during trial that the substance at issue in this ground was anything other than fentanyl or that the fentanyl had been tampered with or altered in any way. See United States v. Ricco, 52 F.3d 58, 61-62 (4th Cir. 1995) (noting that the requirement is "sufficient proof that the evidence is what it purports to be and has not been altered in any material respect"). The Court denies Robinson's motion as to this ground.

**10. Rule 29 Motion: Counts One, Two, Three, Four**

Robinson argues that the Court erred in denying his Rule 29 Motion for Judgment of Acquittal as to Counts One (Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances), Two (Distribution of Methamphetamine), Three (Possession with Intent to Distribute Methamphetamine - Aiding and Abetting), and Four (Possession with Intent to Distribute Cocaine Hydrochloride - Aiding and Abetting). Robinson argues that there was insufficient evidence as a matter of fact and law to find that Robinson committed these offenses.

The Court finds that the evidence to support conviction on these counts was overwhelming. The jury heard testimony from Chappell and Jiminez, who testified that Robinson led a drug

**USA v. ROBINSON** **1:18-CR-50-1**

**ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL [ECF NO. 270]**

trafficking organization in northern West Virginia, selling methamphetamine, cocaine, and fentanyl. The jury heard testimony from drug addicts who purchased drugs from Robinson and his co-conspirators. Law enforcement conducted two controlled buys of methamphetamine from Robinson. Robinson's motion is denied on this ground.

**11. Rule 29 Motion: Generally**

Robinson argues that the Court erred in denying his Rule 29 Motion for Judgment of Acquittal at the close of the Government's case to dismiss any of the charges herein for any other reason set forth in the record herein. Although not raised in his written motion, counsel, during the February 26, 2020, hearing, urged the Court to consider its refusal to ask, during voir dire, about prospective jurors' bumper stickers under this "catch all" category. Voir dire is generally left to the discretion of the trial court, and error will be found "only in a rare case." United States v. Hsu, 364 F.3d 192, 203 (4th Cir. 2004) (citation omitted). Upon review of its voir dire, the Court finds that its inquiry of prospective jurors was sufficient to ferret out any bias or partiality in the juror pool such that inquiry concerning bumper stickers was unnecessary. See United States v. Medina, 326 F. App'x 692 (2009) (unpublished) (affirming guilty verdict and finding no

16

error where trial court refused to poll prospective jurors about the existence and content of any bumper stickers on their vehicles).

No other bases were offered in support of this particular ground of Robinson's motion. Thus, for all of the reasons set forth herein, the motion is denied as to this ground.

**12.   Jury Instruction: "But For" Causation**

The Court incorporates its findings in Section 6 above (Rule 29 Motion: Count Ten). Based on these findings, the Court's jury instruction as to Count Ten was proper. Robinson's motion is denied as to this ground.

## IV.   CONCLUSION

For the reasons discussed above, the Motion is **DENIED** [ECF No. 270]. Further, the motion docketed at ECF No. 255 was **DENIED** during trial, and the docket shall so reflect. The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: May 11, 2020

/s/ Thomas S. Kleeh
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE